IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GERARDO PINEDO, SR., INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF GERARDO PINEDO, JR., | § § § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:14-CV-0958-D |
| VS. | § § | |
| THE CITY OF DALLAS, TEXAS, et al., | § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action arising from the use of deadly force by police officers, defendant City of Dallas, Texas (the "City") moves under Fed. R. Civ. P. 12(b)(6) to dismiss the federal-law claims of plaintiff Gerardo Pinedo, Sr.'s ("Pinedo's") first amended complaint ("amended complaint"), and separately moves to dismiss Pinedo's state-law claims. For the reasons that follow, the court grants the City's motions to dismiss and grants Pinedo leave to amend except as to his state-law claims, which are barred against the City by sovereign immunity.

I

Pinedo brings this action individually, and on behalf of the estate of his deceased son Gerardo Pinedo, Jr. ("Junior"), against defendants the City, Jamal Robinson ("Officer Robinson") and Mark Meltabarger ("Officer Meltabarger"). Officers Robinson and Meltabarger are both Dallas Police Officers.

According to Pinedo's amended complaint,[1] in 2013 Officers Robinson and Meltabarger responded to a 911 call from an individual who had heard noises coming from an adjacent residence and believed there was an intruder inside.  Junior was lawfully within the residence.  Upon arriving at the residence, Officers Robinson and Meltabarger confronted Junior.  Junior (upon information and belief) was unarmed, and he voluntarily exited the residence at the Officers' request.

Attached to Pinedo's amended complaint is the affidavit of Raul Alvarado Ramirez ("Ramirez"), who lives next door to the residence where Junior was located.  According to Ramirez, between 9:50 p.m. and 10:00 p.m. on the occasion in question, he heard a gun shot, looked out a window in order to view the property next door, and observed a person (Junior) lying flat on the ground.  Ramirez also observed three officers standing around the body, one of whom shined a flashlight on the body while another aimed a rifle at it.  Ramirez avers that Junior was moving around like he was in pain.  Another officer then approached Junior with what Ramirez describes as a large black tube or object (later identified as a Taser), and prodded Junior with it.  At this point, Junior began shivering and shaking and appeared to be in pain.  According to Ramirez, the officers remained on the premises for another 20 minutes,

---

[1]In deciding Pinedo's Rule 12(b)(6) motion, the court construes the amended complaint in the light most favorable to Pinedo, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

and during that period, none appeared to render any medical assistance to the person.

Pinedo later filed this suit against the City and Officers Robinson and Meltabarger, individually and in their official capacities.  After the City filed a motion to dismiss, Pinedo filed the instant amended complaint.  Pinedo alleges claims under 42 U.S.C. §§ 1983 and 1985(3), asserting violations of Junior's Fourth and Fourteenth Amendment rights.  He also alleges state-law claims against the City and Officers Robinson and Meltabarger for assault and battery, false arrest, negligent failure to train and discipline, intentional and negligent infliction of emotional distress, and gross negligence.  On the City's unopposed motion, the court dismissed Pinedo's state-law tort claims against Officers Robinson and Meltabarger pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e).  In two motions, the City now moves to dismiss Pinedo's amended complaint and his state-law claims against the City.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive the City's motions, Pinedo's amended complaint must allege enough facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be

enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*,

556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2),

a pleading must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief." Although "the pleading standard Rule 8 announces does not require

'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the

elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court considers first the City's motion to dismiss Pinedo's § 1983 claims against

the City.

A

A municipality is a "person" subject to suit under § 1983 under certain

circumstances. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).

Although a municipality cannot be held liable simply on a theory of *respondeat superior*, *id.*

at 691, it can be held liable if a deprivation of a constitutional right was inflicted pursuant to

an official policy or custom, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir.

2001).   Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

The first element requires that Pinedo adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Id.* at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (citations, brackets, and some internal quotation marks omitted).   A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, Pinedo must adequately plead the identity of a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

"A 'policymaker' must be one who takes the place of the governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental[.] . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Pinedo adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). Pinedo "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted). Pinedo therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Bd. of Cnty.*

*Comm'rs*, 520 U.S. at 411) (internal quotation marks omitted).  Simple or even heightened negligence is insufficient to meet the deliberate indifference requirement.  *Piotrowski*, 237 F.3d at 579 (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 407).

B

Pinedo points to three customs or policies of the City that he contends caused the violations of Junior's constitutional rights and form the basis of the City's liability under § 1983.  In count A of his amended complaint, he alleges that the City is liable for Officers Robinson and Meltabarger's violation of Junior's Fourth Amendment right to be free from the use of excessive force, because the City maintained a custom of Dallas police officers' using excessive force that was "so common and well settled as to constitute . . . municipal policy."  Am. Compl. ¶ 12.  In count C, Pinedo asserts that the City "developed and maintained a policy of deficient training of its police force in the use of force, including the use of deadly force in the apprehension of individuals." *Id.* ¶ 74.  In count D, Pinedo alleges that the City is liable for Officers Robinson and Meltabarger's violation of Junior's Fourth Amendment right to be free from unlawful seizure (or wrongful arrest), because in committing the wrongful arrest against Junior, Officers Robinson and Meltabarger "were acting within the custom, policy, practice and/or procedure of the City." *Id.* ¶ 80.

C

The court will consider each of Pinedo's § 1983 claims together.

1

The City contends that Pinedo's § 1983 claims must be dismissed because he fails to allege the identity of the City's final policymaker.  The City posits that the amended complaint is "vague and conclusory," and that although Pinedo refers to the City Manager, City Attorneys, City Council, and Chief of Police as policymakers, "nowhere in his Complaint does [he] identify the City's final policymaker to whom the Court could attribute knowledge of the alleged City customs that [he] asserts led to a deprivation of [Junior's] constitutional rights coupled with deliberate indifference to a risk of such deprivations," nor does he "plead *facts* which would allow this Court to make such a determination."  Mot. to Dismiss Am. Compl. 8.

"It is well established that a city is not liable under § 1983 on the theory of respondeat superior."  *Valle*, 613 F.3d at 541 (citing *Monell*, 436 U.S. at 694).  To impose municipal liability under § 1983, a plaintiff must identify an official policy or custom, of which a final policymaker can be charged with actual or constructive knowledge.  *Id.*  Whether a city official is a final policymaker is a question of state and local law.  *Praprotnik*, 485 U.S. at 124.  As the court has noted above, a policymaker is one who takes the place of the governing body in a designated area of city administration, *Webster*, 735 F.2d at 841; governs not only conduct but decides the goals for a particular city function and devises the means of achieving those goals, *id.*; *Bennett*, 728 F.2d at 769; and is not supervised except

- 8 -

as to the totality of his performance, *Webster*, 735 F.2d at 841; *Bennett*, 728 F.2d at 769.  In

the context of § 1983 claims, the Supreme Court has emphasized that courts must be sensitive

to the distinction between decisionmakers and final policymakers.

> Municipal liability attaches only where the decisionmaker
> possesses final authority to establish municipal policy with
> respect to the action ordered.  The fact that a particular
> official—even a policymaking official—has discretion in the
> exercise of particular functions does not, without more, give rise
> to municipal liability based on an exercise of that discretion.
> The official must also be responsible for establishing final
> government policy respecting such activity before the
> municipality can be held liable.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986) (internal citations omitted); *see

also Jett*, 7 F.3d at 1246 ("In *Pembaur* and *Praprotnik* the Court carefully distinguished

between those having mere *decisionmaking* authority and those having *policymaking*

authority.").

    Policymaking authority requires more than a showing of mere discretion or

decisionmaking authority on the part of the official.  *Webster*, 735 F.2d at 841.  If the

governing body chooses to delegate policymaking authority to a city official, it does so in

either of two ways.  *Bennett*, 728 F.2d at 769.  It may delegate policymaking power by an

express statement, job description, or other formal action.  *Id.*; *Swann v. City of Dallas*, 922

F. Supp. 1184, 1204 (N.D. Tex. 1996) (Boyle, J.), *aff'd*, 131 F.3d 140 (5th Cir. 1997) (table).

Or it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking

role.  *Bennett*, 728 F.2d at 769.  In essence, the governing body must expressly or impliedly

acknowledge that the agent acts in lieu of the governing body to set goals and to structure

and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent. *Webster*, 735 F.2d at 841. Whether an official has been delegated final policymaking authority is a question of law for the judge, not a question of fact for the jury. *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

Pinedo lists the City Manager, City Attorneys, City Council, and Chief of Police as "policymakers" responsible for the City's policies and customs he alleges caused the violations of Junior's constitutional rights. To the extent Pinedo attempts to plead that the City Manager or City Attorneys are final policymakers for the City, his allegations are insufficient, because he has not pointed to any state or local law or evidence of custom, and the court is aware of none, that would permit the court to conclude as a matter of law that these individuals have final policymaking authority with respect to Dallas Police Department policies or customs.

Concerning the Chief of Police, Pinedo cites the Dallas City Charter, which grants the Chief of Police "immediate direction and control of the police department, subject to the supervision of the city manager." Am. Compl. ¶ 10. This authority, however, does not permit the court to conclude as a matter of law that the Chief of Police is a final policymaker for the City. Rather, because the Chief of Police's authority is subject to supervision by the City Manager, this provision indicates that the Chief of Police does *not* act in lieu of the governing body, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent. *See Webster*, 735 F.2d at 841. In fact, this

court has previously considered this language from the City Charter and concluded that the delegation it contains demonstrates that the Chief of Police is *not* the final policymaker for the Dallas Police Department because he is at all times subject to the rules and supervision of the City Manager. *See Mosser v. Haney*, 2005 WL 1421440, at *4 (N.D. Tex. June 17, 2005) (Boyle, J.); *see also Guzman v. City of Dallas*, 2010 WL 4514369, at *3 (N.D. Tex. Aug. 31, 2010) (Kaplan, J.), *rec. adopted*, 2010 WL 4514364 (N.D. Tex. Nov. 9, 2010) (Boyle, J.); *cf. Flanagan v. City of Dallas*, ___ F.Supp.3d ___, 2014 WL 4747952, at *4 (N.D. Tex. Aug. 8, 2014) (Toliver, J.) (recognizing that language in City Charter is insufficient to allege that Chief of Police is City final policymaker, but denying motion to dismiss where plaintiff also alleged that member of City Council delegated policymaking authority for police officer training to Chief of Police), *rec. adopted*, 2014 WL 4747952 (N.D. Tex. Sept. 23, 2014) (Lynn, J.). The court therefore concludes as a matter of law that the Chief of Police is not a final policymaker for the City with respect to the official policies or customs alleged in Pinedo's § 1983 claims.

To the extent Pinedo's § 1983 claims rely on the City Council as the final policymaker with authority to promulgate policies and regulations for the Dallas Police Department, Pinedo has adequately alleged a final policymaker under state and local law. The City Charter grants the City Council policymaking and oversight responsibilities. *See* Dallas City Charter, Ch. III, § 13; Ch. VI, § 2(7). And relying on the City Charter, this court has previously held that the City Council does have final policymaking authority with respect to police regulations. *See Curtis v. Arapaho Venture Ltd.*, 2004 WL 2248236, at *3 (N.D. Tex.

Oct. 5, 2004) (Sanders, J.) ("The Dallas City Charter establishes that the Dallas City Council retains final authority for promulgating all police regulations[.]"); *see also Bolton*, 541 F.3d at 550 (referring to City Council as entity with authority to delegate policymaking power to other individuals or entities, such as City Manager).

Accordingly, to the extent Pinedo's § 1983 claims are based on the final policymaking authority of the City Manager, City Attorneys, or the Chief of Police, the court grants the City's motion to dismiss.  Insofar as Pinedo's § 1983 claims are based on the final policymaking authority of the City Council, the City's motion to dismiss is denied.

2

The City moves the court to dismiss Pinedo's § 1983 claims on the ground that he has failed to allege facts supporting the existence of an official custom or policy.

"'Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy.'" *Pogue v. City of Dallas*, 2014 WL 3844675, at *3 (N.D. Tex. Aug. 4, 2014) (Boyle, J.) (quoting *Piotrowski*, 237 F.3d at 579).  A plaintiff's allegations regarding the policy or custom cannot be conclusory, and they must contain specific facts showing the existence of such a custom. *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. Arlington*, 957 F.2d 1258, 1278 (5th Cir. 1992)).  "A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority." *Renfro v. City of Kaufman*, 27 F.Supp.2d 715, 717 (N.D. Tex. 1998) (Fish, J.) (citing *Worsham v.*

*City of Pasadena*, 881 F.2d 1336, 1339-40 (5th Cir. 1989)).  "'Boiler plate allegations of municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient.'"  *Crow v. Cash Special Util. Dist.*, 2005 WL 1126826, at *2 (N.D. Tex. May 11, 2005) (Sanders, J.) (quoting *Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 736 (7th Cir. 1994)).

Pinedo alleges that Dallas Police Officers have a custom of "using excessive force" that is "so common and well settled as to constitute a custom that fairly represents municipal policy." Am. Compl. ¶ 12.  He avers that Officers Robinson and Meltabarger acted in accordance with this policy in using excessive force when apprehending Junior.  Pinedo also alleges that, in perpetrating the alleged wrongful arrest of Junior, Officers Robinson and Meltabarger "were acting within the custom, policy, practice and/or procedure of the City," *id.* at ¶ 80, and that the City "developed and maintained a policy of deficient training of its police force in the use of force, including the use of deadly force in the apprehension of individuals," *id.* at ¶ 74.

These conclusory allegations are insufficient to support a reasonable inference that there existed an official City policy or custom that led to the violation of Junior's constitutional rights.  Assuming that all the facts alleged in the amended complaint are true, Pinedo has alleged only that a single episode occurred in which Officers Robinson and Meltabarger violated Junior's constitutional rights. *See Renfro*, 27 F.Supp.2d at 717.  Pinedo does not point to any prior instances of Dallas Police Officers' using excessive force, or committing wrongful arrests, that would indicate a widespread practice that is so common

and well-settled as to constitute a custom that fairly represents municipal policy.  Nor does he allege any facts that show what training police officers have received and how that training is insufficient.  A mere allegation that a custom or policy exists, without any factual assertions to support such a claim, is no more than a formulaic recitation of the elements of a § 1983 claim and is insufficient to state a claim for relief.  Without further factual allegations to support a reasonable inference that such official policies or customs exist, the City's motion to dismiss must be granted on this ground as well.

3

The City also moves to dismiss Pinedo's § 1983 claims against it on the ground that his amended complaint fails to allege that any City policymaker had actual or constructive knowledge of any official policy or custom, or that the City's final policymakers were deliberately indifferent to a known or obvious risk that these customs would result in deprivations of rights.

To state a claim under § 1983 against the City, Pinedo must not only identify a final policymaker and allege the existence of a policy or custom, he must plead facts that enable the court to draw the reasonable inference that actual or constructive knowledge of the custom is attributable to the City's final policymaker.  *See Valle*, 613 F.3d at 542 (quoting *Webster*, 735 F.2d at 842).

> Actual knowledge may b[e] shown by such means as discussions at council meetings or receipt of written information.  Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for

> example, where the violations were so persistent and widespread
> that they were the subject of prolonged public discussion or of
> a high degree of publicity.

*Okon v. Harris Cnty. Hosp. Dist.*, 426 Fed. Appx. 312, 316 (5th Cir. 2011) (per curiam) (quoting *Bennett*, 728 F.2d at 768) (internal quotation marks omitted).  A plaintiff must also show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."  *Bd. of Cnty. Comm'rs*, 520 U.S. at 411.

Pinedo alleges in his amended complaint that the customs, policies, practices, and procedures of using excessive force "were known by the City of Dallas, the City Attorneys, the City Manager, the City Council and the Chief of Police."  Am. Compl. ¶ 62.  He also alleges that the City's "failure to provide adequate training to its police officers regarding the use of deadly force reflects deliberate indifference and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens[.]" *Id.* at ¶ 75. These conclusory allegations of knowledge and deliberate indifference are alone insufficient to permit the court to draw the reasonable inference that the City Council—the City's final policymaker—can be charged with actual or constructive knowledge of the alleged custom of tolerating the unconstitutional use of excessive or deadly force, or of a custom or policy of insufficient training, supervision, or discipline, or that the City Council was deliberately indifferent to the risk that a violation of rights would follow.  *See Bennett*, 728 F.2d at 768. Pinedo has failed to plead any facts that enable the court to draw the reasonable inference that there have been any prior instances where Dallas Police Officers have used excessive

force or committed wrongful arrests, such that these instances would alert the City Council to a widespread practice so pervasive as to constitute a custom, or to a failure in the training mechanisms in place. Pinedo's assertions are not factual allegations that provide "the grounds of his entitlement to relief"; they are nothing more than "a formulaic recitation of the elements of a [§ 1983] cause of action." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

Accordingly, because Pinedo has failed to plead adequately that the City Council had actual or constructive knowledge of a custom or policy, or exhibited deliberate indifference to the risk that a violation of rights would result from that policy or custom, the court grants the City's motion to dismiss Pinedo's § 1983 claims against it on this ground as well.

IV

The City moves to dismiss Pinedo's conspiracy claim under 42 U.S.C. § 1985(3), in which he alleges that defendants conspired to violate § 1983. The City maintains that Pinedo has failed to plead operative facts upon which the claim is based.

Section 1985(3) enables a person who is injured by a conspiracy to deprive him of equal protection of the laws, or of equal privileges and immunities under the laws, to recover damages. To establish a § 1985(3) claim, a plaintiff must demonstrate that:

> (1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or

- 16 -

privilege of a citizen of the United States; and (5) the action of
the conspirators is motivated by a racial animus.

*Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001) (quoting

*Wong v. Stripling*, 881 F.2d 200, 202-03 (5th Cir. 1989)).

Pinedo's amended complaint fails to allege facts regarding any of these elements of

a conspiracy claim under § 1985(3).  In fact, it is unclear whether Pinedo actually intends to

plead a claim for relief under § 1985(3).  His allegations regarding § 1985(3) are only that

jurisdiction exists under § 1985(3), Am. Compl. ¶ 16, and that Officers Robinson and

Meltabarger deprived Junior of "his civil rights, privileges or immunities secured by the

Constitution and laws pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3)," *id* at ¶ 69.

These allegations are insufficient to state a plausible claim for conspiracy under § 1985(3).

Accordingly, the City's motion to dismiss Pinedo's § 1985(3) conspiracy claim is granted.

V

The City moves to dismiss count B of Pinedo's amended complaint, entitled "Racial

Profiling."  Pinedo alleges that Officers Robinson and Meltabarger "clearly and wrongfully

used race as a factor, a proxy, for reasonable suspicion and using excessive force on

[Junior]," *id.* at ¶ 64; and "that it is the policy of the Dallas Police Department to treat

Hispanics in a cruel manner regardless of the circumstances or the need to," *id.* at ¶ 65.  The

City contends that Pinedo has failed to allege a claim for racial profiling because he alleges

no facts that establish that defendants' actions had a discriminatory effect or were motivated

by a discriminatory purpose.

As an initial matter, the court must determine the proper rubric under which Pinedo's racial profiling claim is analyzed. The City interprets count B as an equal protection claim under the Fourteenth Amendment. But it also notes that, to the extent count B attempts to advance an excessive force claim, the Fourth Amendment's reasonableness standard rather than the due process standard of the Fourteenth Amendment controls the analysis of any such claim. Pinedo appears in his response to confirm that count B is a claim for a violation of the Equal Protection Clause of the Fourteenth Amendment. *See* P. Resp. Mot. to Dismiss Am. Compl. 21 ("Violations of 14th Amendment may be inferred from Other Constitutional Violations"). Further, the allegations in count B, although not entirely clear, suggest that Pinedo intends to allege a claim under the Equal Protection Clause as well. *See* Am. Compl. ¶¶ 64, 67 (alleging that Officers Robinson and Meltabarger "clearly and wrongfully used race as a factor, a proxy, for reasonable suspicion and using excessive force on [Junior]," and "treated [Junior] in the manner they did because he was Hispanic"). The court therefore construes Pinedo's claim as one arising under the Equal Protection Clause of the Fourteenth Amendment.[2]

"'Selectivity in the enforcement of criminal laws is subject to constitutional restraints,' and the rubric for analyzing a racial profiling claim thus draws on 'ordinary equal protection standards.'" *Flanagan*, ___ F.Supp.3d at ___, 2014 WL 4747952, at *4 (quoting

---

[2]If Pinedo intends in count B to state a claim against the City for excessive force under the Fourth Amendment, such a claim is subsumed in Pinedo's allegations in count A, which the court discusses *supra* at § III.

*Wayte v. United States*, 470 U.S. 598, 608 (1985)). "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)).[3]

Even if Pinedo's amended complaint can be construed to allege that the City of Dallas has violated the Equal Protection Clause by engaging in a practice and pattern of racial profiling of Hispanics, under which police officers have arrested and used excessive force against Hispanics based on their race, his claim is conclusory. Pinedo does not allege that Junior was treated differently from other, similarly-situated non-Hispanics. Because Pinedo has failed to allege a plausible claim that Junior was subjected to disparate treatment from that received by other, similarly-situated non-Hispanics, his racial profiling claim must be dismissed.

VI

The court now considers the City's motion to dismiss Pinedo's state-law tort claims against the City.

---

[3]In count B of his amended complaint, Pinedo also appears to assert a claim under Tex. Code Crim. Proc. Ann. Art. 2.131-137. The Texas Code of Criminal Procedure does not apply to civil rights litigation filed in federal court, and thus, to the extent Pinedo asserts a claim based on these provisions, his claim is dismissed. *See, e.g., Turner v. Crites*, 2009 WL 913820, at *1 (S.D. Tex. Apr. 1, 2009).

A

The City moves on the basis of governmental immunity to dismiss Pinedo's claims

for false arrest, assault and battery, negligent failure to train and discipline, gross negligence,

intentional infliction of emotional distress, negligent infliction of emotional distress, and

wrongful death. Pinedo agrees that § 101.057 of the Texas Tort Claims Act ("TTCA"), Tex.

Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 2011), bars his claims for assault,

battery and false imprisonment (or false arrest).[4] The court therefore dismisses counts D and

E of Pinedo's amended complaint.

B

The City moves to dismiss Pinedo's claims for intentional infliction of emotional

distress on the ground that, because it is an intentional tort, it is barred under Tex. Civ. Prac.

& Rem. Code Ann. § 101.057. Under the TTCA, governmental immunity is waived only for

cases involving the use of publicly-owned vehicles, premises defects, and injuries arising

from the conditions or use of property. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021

(West 2011). Further, § 101.057 provides that the waiver of immunity does not apply to any

claim "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex.

Civ. Prac. & Rem. Code Ann. § 101.057 (West 2011). Intentional infliction of emotional

_____

[4]In their motion and response discussing Pinedo's state-law claims, the City and Pinedo both include Pinedo's claim in count D for false arrest. Pinedo's amended complaint appears, however, to predicate his false arrest claim on the Fourth Amendment, and to be asserted under § 1983. Regardless whether Pinedo intends to bring a state-law tort claim or a constitutional claim in count D, it must be dismissed either for the reasons discussed *supra* at § III, or under Tex. Civ. Prac. & Rem. Code Ann. § 101.057 (West 2011).

distress is an intentional tort under Texas state law.  *See Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 16 n.3 (Tex. 2008) (quoting *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000)) ("The elements of intentional infliction of emotional distress are: '(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe.'").  Because Pinedo's intentional infliction of emotional distress claim does not fall within the exception to sovereign immunity found in the TTCA, the City is immune from liability, and the court therefore dismisses the intentional infliction of emotional distress claim against the City.

The court also dismisses Pinedo's claim for negligent infliction of emotional distress. "Texas law does not recognize negligent infliction of emotional distress as a viable cause of action." *Thompson v. Bank of Am., N.A.*, 13 F.Supp.3d 636, 653 (N.D. Tex. 2014) (Boyle, J.) (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).  Accordingly, the court dismisses count G of Pinedo's amended complaint.

C

The City moves to dismiss Pinedo's claims for negligence and gross negligence, maintaining that his negligence-based theories of liability are also barred by § 101.057 because they are based on intentional acts.  Pinedo responds that, because Officers Robinson and Meltabarger did not intend to kill Junior in using the Taser on him, but only to contain him, the negligence claims are not based on intentional acts, but on negligent acts, and sovereign immunity does not apply.

Concerning Pinedo's claim for gross negligence, the gravamen of his amended complaint is that Officers Robinson and Meltabarger used excessive force in apprehending Junior. Pinedo alleges that Officers "Robinson and Meltabarger knew or should have known that their course of action of drawing a lethal weapon and firing it at [Junior] would place [him] in grave danger of serious injury." Am. Compl. ¶ 103. Pinedo maintains that the distinction between his gross negligence claim and an intentional tort claim is that he is not alleging that Officers Robinson and Meltabarger intended to kill Junior. But under Texas law, "[c]laims of excessive force in the context of a lawful arrest arise out of a battery rather than negligence, whether the excessive force was intended or not." *City of Watauga v. Gordon*, 434 S.W.3d 586, 593 (Tex. 2014) (citing *City of San Antonio v. Dunn*, 796 S.W.2d 258, 261 (Tex. App. 1990, writ denied)). "While it may be . . . that the officers . . . mistakenly believed that they needed to exert the amount of force that they did, that does not affect the intentionality of the initial action or the objective excessiveness of the force." *Id.* Even if it is assumed that Officers Robinson and Meltabarger did not intend the extent of the harm they caused Junior, they did intend the unwanted touching—the use of a firearm as well as a Taser. Therefore, Pinedo's gross negligence claim is in fact a claim arising out of an intentional tort—a battery—and therefore the City's sovereign immunity is not waived under the TTCA.

Pinedo's claim for negligent failure to train and discipline must be dismissed as well. The TTCA waives immunity only for cases involving the use of publicly-owned vehicles, premises defects, and injuries arising from the conditions or use of property. *See* Tex. Civ.

Prac. & Rem. Code Ann. § 101.021 (West 2011).  Pinedo's negligence claim does not fall within any of these exceptions to sovereign immunity.  Pinedo alleges that the City was negligent in failing to provide certain training and guidelines for its officers in the use of force.  No tangible property is involved in negligent failure to provide training or guidelines, as alleged in count F of Pinedo's amended complaint.  *See, e.g., Holland v. City of Houston*, 41 F.Supp.2d 678, 711 (S.D. Tex. 1999) (quoting *Riggs v. City of Pearland*, 177 F.R.D. 395, 406 (S.D. Tex. 1997)) (noting that "'a failure to train, control and supervise, and improper police procedures are not waived by the TTCA'"; rather, "'these negligence allegations are barred by sovereign immunity.'").

Accordingly, the court dismisses Pinedo's claims against the City for negligent failure to train and discipline and for gross negligence, concluding that the City is entitled to sovereign immunity with respect to these claims.

## VII

The City also moves to dismiss Pinedo's wrongful death and survival claims against the City.  These claims derive wholly from the causes of action that Junior could have asserted for his own injuries had he lived.  *See Delesma v. City of Dallas*, 770 F.2d 1334, 1339 (5th Cir. 1985).  Because the court has dismissed all of Pinedo's substantive claims against the City, the court also dismisses his wrongful death and survival claims.

## VIII

Although the court is dismissing Pinedo's claims against the City, it will permit him to replead his federal-law claims.  "[D]istrict courts often afford plaintiffs at least one

- 23 -

opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, J.) (citation and internal quotation marks omitted).  The defects in Pinedo's state-law claims, however, are incurable as to the City because they are barred by sovereign immunity.  The court therefore declines to permit Pinedo to replead his claims against the City in counts E, F, G, and H.  The court grants Pinedo 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

\* \* \*

For the reasons explained, the court grants the City's motions to dismiss, and it grants plaintiff Pinedo leave to amend except as to his state-law claims, which are barred by sovereign immunity.

**SO ORDERED**.

January 15, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE