IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GERARDO PINEDO, SR.,               §
INDIVIDUALLY AND ON BEHALF         §
OF THE ESTATE OF GERARDO           §
PINEDO, JR.,                       §
                                   §
                    Plaintiff,     §
                                   §   Civil Action No. 3:14-CV-0958-D
VS.                                §
                                   §
THE CITY OF DALLAS, TEXAS, et al., §
                                   §
                    Defendants.    §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Gerardo Pinedo, Sr. ("Pinedo"), arising from the use of deadly force against his son, defendants Jamal Robinson ("Officer Robinson") and Mark Meltabarger ("Officer Meltabarger") move for summary judgment based on qualified immunity. Concluding that there is a genuine issue of material fact that precludes the entry of summary judgment on Pinedo's excessive force claim against Officer Meltabarger, the court denies defendants' motion as to that claim. The court otherwise grants defendants' motion, and it dismisses Pinedo's action against Officer Robinson in his individual capacity by Fed. R. Civ. P. 54(b) final judgment filed today.

I

Because this case is the subject of two prior memorandum opinions and orders, *see Pinedo v. City of Dallas*, 2015 WL 221085 (N.D. Tex. Jan. 15, 2015) (Fitzwater, J.) ("*Pinedo I*"), and *Pinedo v. City of Dallas*, 2015 WL 5021393 (N.D. Tex. Aug. 25, 2015) (Fitzwater,

J.), *appeal docketed*, No. 15-11038 (5th Cir. Oct. 22, 2015) ("*Pinedo II*"), the court will recount only the background facts and procedural history that are pertinent to this decision.

A

Pinedo brought this action individually, and on behalf of the estate of his deceased son Gerardo Pinedo, Jr. ("Junior"), against defendants the City of Dallas, Texas (the "City"), and Officers Robinson and Meltabarger, who are both police officers employed by the Dallas Police Department ("DPD"). Following prior rulings, Officers Robinson and Meltabarger, in their individual capacities, are the remaining defendants.

According to Pinedo's second amended complaint,[1] in 2013 Officers Robinson and Meltabarger were the first officers to respond to a 911 call from an individual who had heard noises coming from an adjacent residence and believed there was an intruder inside. Officer Robinson was in the field training program in his first phase of training under the supervision of Officer Meltabarger. Officers Robinson and Meltabarger were each armed with pepper spray, a taser, a baton, and a firearm. Junior was lawfully within the residence, was unarmed, and did not have any weapon or device on his person that could be perceived as a weapon.

Pinedo alleges that, prior to the shooting, Officers Robinson and Meltabarger observed and heard Junior engaging in behavior that suggested that his thoughts, perceptions,

---

[1]In deciding Officer Robinson and Officer Meltabarger's summary judgment motion, the court views the evidence in the light most favorable to Pinedo as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

judgments, and emotions were substantially impaired, that he was suffering from a mental illness or cognitive impairment, and that he needed medical or psychological assistance. At some point after Officers Robinson and Meltabarger arrived at the scene, Junior exited the residence and proceeded to run in a circle, curl himself up into a ball, and pound his fists on the ground. Pinedo alleges that, at the time of the shooting, Junior was suffering from depression.

Attached to Pinedo's second amended complaint is the affidavit of Raul Alvarado Ramirez ("Ramirez"), who lives next door to the residence. According to Ramirez, between 9:50 p.m. and 10:00 p.m. on the occasion in question, he heard the sound of a gun shot, looked out a window to view the premises next door, and observed a person (Junior) lying flat on the ground. Ramirez also observed three officers standing around Junior, one of whom shined a flashlight on Junior while another aimed a rifle at him, and observed Junior moving around, as if he were in pain. Another officer then approached Junior with what Ramirez describes as a large black tube or object (later identified as a taser), and prodded Junior with it. At this point, Junior began shivering and shaking and appeared to be in pain. According to Ramirez, the officers remained on the premises for another 20 minutes, and, during this period, no one appeared to render any medical assistance to Junior.

Pinedo alleges that Junior was still alive when he was eventually placed in an ambulance and transported to the hospital, where he died the next day.

- 3 -

B

Pinedo brought this lawsuit against the City and against Officers Robinson and Meltabarger, individually and in their official capacities, alleging federal-law claims under 42 U.S.C. § 1983 for violations of Junior's Fourth and Fourteenth Amendment rights, and under 42 U.S.C. § 1985(3).  Pinedo also asserted a number of state-law tort claims against the City and Officers Robinson and Meltabarger.  On the City's unopposed motion, the court dismissed the state-law tort claims against Officers Robinson and Meltabarger pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e) (West 2011).  In *Pinedo I* the court granted the City's motion to dismiss the state and federal-law claims against the City.  The court granted Pinedo leave to amend his federal-law claims, and he later filed his second amended complaint.  In *Pinedo II* the court again granted the City's motion to dismiss the state and federal-law claims against the City and Officers Robinson and Meltabarger in their official capacities.  In a Rule 54(b) final judgment, the court dismissed with prejudice Pinedo's actions against the City and against Officers Robinson and Meltabarger in their official capacities.  His actions against Officers Robinson and Meltabarger in their individual capacities remain pending.

Officers Robinson and Meltabarger now move for summary judgment based on qualified immunity.  Pinedo opposes the motion.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, he can obtain summary judgment by pointing the court to the absence of evidence on

any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once he does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

When qualified immunity has been raised, "[t]he moving party is not required to meet [his] summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Rather, the movant need only plead his good-faith entitlement to qualified immunity, whereupon "the burden shifts to the plaintiff to rebut it." *Id.* (internal quotation marks, citation, and emphasis omitted); *see also Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when government official pleads qualified immunity, plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct"). Once qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City*

*of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).[2]

## III

Qualified immunity jurisprudence is well settled. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2085 (2011)) (some internal quotes omitted), *cert. denied*, ___ U.S. ___,135 S. Ct. 1492 (2015).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiff[] as the part[y] asserting the injuries, the facts [he has] alleged show that defendants' conduct

---

[2]In his response brief, Pinedo correctly states the general burden-shifting framework for summary judgment motions, but he incorrectly states the framework when qualified immunity is raised. *See* P. Resp. Br. 17 ("Plaintiff initially contends that Defendants have not met their burden under the law to shift the burden of proof onto Plaintiff[]."). Because Officers Robinson and Meltabarger have asserted in their summary judgment motion their entitlement to qualified immunity, the burden has shifted to Pinedo to demonstrate that they are *not* entitled to qualified immunity. *See, e.g., McClendon*, 305 F.3d at 323.

violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.")).[3] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* Finally, "[e]ven if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (citing *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (en banc)). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that

---

[3]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id.* The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 242.

the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)).

IV

Officers Robinson and Meltabarger maintain that they are entitled to summary judgment on Pinedo's unlawful seizure (or false arrest) claim because the pleadings fail to adequately state facts sufficient to defeat qualified immunity. They contend that they raised the affirmative defense of qualified immunity as to Pinedo's unlawful seizure claim in their motion for summary judgment, arguing that their seizure of Junior did not violate the Fourth Amendment because they had probable cause to believe that Junior may have committed the Texas penal offenses of burglary of a habitation, burglary of a building, or criminal trespass, or, alternatively, that it was objectively reasonable for them to believe that Junior had committed one of these offenses. Once Officers Robinson and Meltabarger raised the defense of qualified immunity on Pinedo's unlawful seizure claim, the burden shifted to Pinedo to rebut the defense. *See McClendon*, 305 F.3d at 323.

In his response briefing, Pinedo does not address his unlawful seizure claim, much less the qualified immunity defense. Although this failure does not permit the court to enter a "default" summary judgment on Pinedo's unlawful seizure claim, *see, e.g., Tutton v. Garland Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence," *Bookman*

- 8 -

*v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp.*

*v. Westowne Associates*, 929 F.2d 160, 165 (5th Cir. 1991)).  And

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Rule 56(e)(2), (3).  Accordingly, because Pinedo has not raised a genuine issue of material fact as to the defense of qualified immunity, the court grants Officers Robinson and Meltabarger's motion for summary judgment on Pinedo's unlawful seizure claim.

V

Officers Robinson and Meltabarger move for summary judgment as to Pinedo's claim against Officer Meltabarger for failure to supervise.  Pinedo's second amended complaint does not appear to assert such a claim against Officer Meltabarger in his individual capacity. But because the second amended complaint alleges that Officer Meltabarger failed to properly supervise Officer Robinson, the court will address this claim.

Officers Robinson and Meltabarger assert that they raised in their summary judgment motion the affirmative defense of qualified immunity as to Pinedo's failure to supervise claim, contending that Officer Meltabarger did not violate Junior's constitutional rights because he did not act with deliberate indifference.  They maintain that Pinedo has not pleaded facts that are sufficient to permit a reasonable inference that Officer Meltabarger was aware that Officer Robinson presented a known or obvious substantial risk of serious harm

to Pinedo.  In his response, Pinedo does not address his failure to supervise claim, much less the qualified immunity defense.  Accordingly, for the reasons set forth *supra* at § IV, the court grants summary judgment based on qualified immunity dismissing Pinedo's failure to supervisor claim.

VI

Officers Robinson and Meltabarger contend that they are entitled to summary judgment on Pinedo's excessive force claim because the force they used against Junior did not violate the Fourth Amendment, and, alternatively, the force they used was objectively reasonable.

A

The court must first decide whether Pinedo has sufficiently alleged a violation of a constitutional right—that Officers Robinson and Meltabarger used excessive force against Junior, in violation of the Fourth Amendment.  *See Ellis*, 2005 WL 525406, at *3 (citing *Saucier*, 533 U.S. at 201) ("To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiff[] as the part[y] asserting the injuries, the facts [he has] alleged show that defendants' conduct violated a constitutional right.").

"'The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers who use excessive force against citizens.'"  *Wright v. City of Garland*, 2014 WL 5878940, at *8 (N.D. Tex. Nov. 13, 2014) (Fitzwater, J.) (quoting *Colston v. Barnhart*, 130 F.3d 96,

102 (5th Cir. 1997)).  "'To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'"  *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)) (some internal quotation marks omitted).

Officers Robinson and Meltabarger concede that they seized Junior and that he suffered an injury; they only challenge the "clearly unreasonable" element.  Accordingly, the court will assume *arguendo* that the only issue pertaining to the violation of a constitutional right element of the qualified immunity defense is whether the excessiveness of Officers Robinson and Meltabarger's force against Junior was clearly unreasonable.

> In deciding this question, [the court] must determine whether "the totality of the circumstances justified" the particular use of force.  *Tennessee v. Garner*, 471 U.S. 1, 9 (1985).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham [v. Connor]*, 490 U.S. [386,] 396 [(1989)].  This is an objective standard: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.  This test "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* The test for reasonableness also must consider "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

*Ramirez*, 542 F.3d at 128-29.

"[A]n officer's use of deadly force is not unreasonable when the officer has reason to believe that the 'suspect poses a threat of serious harm to the officer or others.'" *Davis v. Romer*, 600 Fed. Appx. 926, 929 (5th Cir. 2015) (per curiam) (quoting *Thompson*, 762 F.3d at 437) (citations and internal quotation marks omitted).   "To gauge the objective reasonableness of the force used by a law enforcement officer, [the court] must balance the amount of force used against the need for force," paying "careful attention to the facts and circumstances of each particular case." *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) (alteration, citations, and internal quotation marks omitted).

Pinedo alleges in his second amended complaint that Officer Robinson shot Junior, and that Officer Meltabarger used his taser on Junior.  Officers Robinson and Meltabarger contend that the force used against Junior was objectively reasonable because they reasonably believed that he posed an imminent threat of serious harm.  They posit that they simultaneously shot Junior after he refused to show his hands when commanded to do so; threw an object at Officer Meltabarger, which struck the officer on his head; charged at Officer Robinson, who could not back up because a fence was immediately behind him; and reached for Officer Robinson's gun.  And they maintain that Junior got close enough to Officer Robinson that he was able to grab Officer Robinson's left wrist—his gun hand—before falling to the ground.[4]

---

[4]In his response brief, Pinedo objects to portions of Officers Robinson and Meltabarger's affidavits that he maintains are legal conclusions, and that suggest that the use of lethal force was reasonable because Junior posed an immediate threat to them.  Because the court has considered only the factual statements in Officers Robinson and Meltabarger's

- 12 -

B

The court holds that Pinedo has raised a genuine issue of material fact as to whether Officer Meltabarger's excessive use of force was clearly unreasonable.[5]  *See Anderson*, 477 U.S. at 248 ("An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant.").  Pinedo avers that Officer Meltabarger used his taser on Junior after Officer Robinson shot Junior and Junior was lying on the ground with his hands handcuffed behind his back.  For support, Pinedo cites the affidavit of Ramirez, an eyewitness, who avers that, after he heard a gunshot, he looked out his window and "saw a person laying flat on the ground."  P. App. 145.  He also

> saw three officers surrounding the body on the ground . . . .  One police officer stood over the person on the ground while shining a flashlight on him.  The person on the ground was moving around like he was in pain.  Then two (2) other police officers approach[ed] the person on the ground.  One (1) of those officers held a rifle aimed at the person on the ground while the other officers approached the person on the ground with some type of large black tube or object.  While the officers were shining the light on the person on the ground and aiming a rifle at him, the officer with the object then prodded the body with it and the object lit up with some kind of electrical light.  The body then started shivering and shaking and [he] could tell the person was in a great deal of pain.

---

affidavits, not any legal conclusions, the court overrules Pinedo's objection as moot.

[5]The court must "'examine each individual's entitlement to qualified immunity separately.'"  *Carroll v. Ellington*, 800 F.3d 154, 174 (5th Cir. 2015) (quoting *Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007) (holding that "the district court erred in considering the officers' actions together")).

*Id.* at 145-46.[6]

Pinedo maintains that Ramirez's testimony is corroborated by other summary judgment evidence.  He cites the medical examiner's autopsy report, which notes two abrasions on Junior's back that are "consistent with Taser injuries," P. App. 135, and he offers pictures of the wounds on Junior's back.  And Pinedo asserts that the possible taser marks on Pinedo's back are consistent with Ramirez's testimony that Junior was shot by a weapon (i.e., a taser) while he was lying face-down on the ground.[7]

Officers Robinson and Meltabarger contend that the evidence that Pinedo proffers does not create a genuine issue of material fact because Pinedo does not plead that either of

---

[6]Officers Robinson and Meltabarger object to Ramirez's affidavit, contending that it is not competent, admissible evidence.  They posit that Ramirez is a non-English speaker, that his affidavit (written in English) was allegedly read to him in Spanish before he signed it, but Pinedo does not assert that the Spanish language translation read to Ramirez was accurate, or that the unidentified translator was competent to perform the translation.  Officers Robinson and Meltabarger also assert that Pinedo's counsel, or an unknown third party supplied by Pinedo, was the translator, and the translator likely was not neutral.  They also point to Ramirez's deposition testimony, in which he testified that he did not remember whether anyone had read his affidavit to him before he signed it.  They also aver that Ramirez's affidavit is not properly authenticated under Fed. R. Evid. 901.

The court, in its discretion, overrules the objections.  Officers Robinson and Meltabarger have not offered sufficient grounds for the court to exclude Ramirez's affidavit based on how it was prepared, translated into Spanish, and presented to Ramirez for execution.  Moreover, "the papers of a party opposing summary judgment are usually held to a less exacting standard than those of the moving party."  *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987).

[7]Officers Robinson and Meltabarger object to the portions of expert Gary A. Rini's ("Rini's") affidavit that are based on speculation or state legal conclusions.  Because the court is not relying on Rini's testimony in reaching its decision, the court overrules this objection as moot.

- 14 -

them was the officer who used the weapon against Junior, and that the DPD does not have any weapon (i.e., a stun gun) like the one Ramirez describes. The court disagrees. Ramirez describes a weapon that delivered an "electrical light," and a taser similarly discharges an "electrical current." *See, e.g., Thomas v. Holly*, 533 Fed. Appx. 208, 212 (4th Cir. 2013) (per curiam) (describing a taser), *cert. denied*, ___ U.S. ___, 134 S.Ct. 939 (2014); *Ryan v. City of Fort Worth*, 2009 WL 577284, at *3 n.1 (N.D. Tex. Mar. 5, 2009) (McBryde, J.) (same). Thus a reasonable jury could find that the weapon Ramirez described was a taser. Additionally, the summary judgment evidence permits the reasonable findings that Officer Meltabarger shot and struck Junior using a taser, that Officer Robinson shot and struck Junior using a gun, and that no other officer shot and struck Junior using a weapon. A reasonable jury could therefore find that Officer Meltabarger was the officer whom Ramirez described as using a taser on Junior.

When the evidence is viewed in the light most favorable to Pinedo as the summary judgment nonmovant, a reasonable jury could find that Officer Meltabarger's excessive use of force was clearly unreasonable—that is, that he tased Junior in the back while Junior was lying on the ground in handcuffs, neither threatening the safety of the officers or others, nor resisting arrest, nor attempting to evade arrest by flight. *See Ramirez v. Martinez*, 716 F.3d 369, 373, 378-79 (5th Cir. 2013) (explaining that officer tased plaintiff "while lying face-down on the ground in handcuffs," concluding that "a reasonable officer could not have concluded [plaintiff] posed an immediate threat to the safety of the officers by . . . [lying] on the ground in handcuffs," and upholding denial of qualified immunity on excessive force

claim).

The summary judgment evidence does not exclude either of the competing versions of events—the one recounted by Officer Meltabarger, or the one related by Ramirez. And the disputed facts control the outcome of the case (i.e., the resolution of these facts determines whether Officer Meltabarger used his taser when Junior charged Officer Robinson, at the same time that Officer Robinson discharged his weapon, or whether Officer Meltabarger tased Junior after he had been shot and was lying on the ground handcuffed). The court is not permitted at the summary judgment stage "to make findings of fact from disputed evidence." *Chacon v. Copeland*, 577 Fed. Appx. 355, 360 (5th Cir. 2014) (per curiam). Accordingly, the court concludes that Pinedo has presented sufficient evidence to create a genuine issue of material fact as to whether Officer Meltabarger's use of force violated the Fourth Amendment. *See, e.g., id.* at 359-60 (concluding that plaintiff produced sufficient evidence to survive officers' summary judgment motion because disputes of material fact existed and summary judgment evidence did not "clearly reveal the officers' version of events to be correct").

C

This genuine issue of material fact also precludes resolution at the summary judgment stage of the question whether Officer Meltabarger was objectively unreasonable in his belief that his use of force against Junior was not excessive in light of clearly established law. *See Chacon*, 577 Fed. Appx. at 363 (concluding that dispute of material fact that precluded resolution of whether officers violated plaintiff's constitutional right also precluded

- 16 -

resolution of whether officers' actions were unreasonable in light of clearly established law). "'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson*, 483 U.S. at 640). "[T]he 'central concept' of this analysis is 'fair warning,' which means that a reasonable official would understand the conduct in this case violated the Fourth Amendment." *Id.* (citing *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)). The right to be free of excessive force was clearly established on July 17, 2013, the date of the incident. *See, e.g., id.*; *Newman*, 703 F.3d at 763 ("It is beyond dispute that Newman's right to be free from excessive force during an investigatory stop or arrest was clearly established in August 2007."); *Holland v. Harmon*, 1998 WL 292361, at *3 (N.D. Tex. May 28, 1998) (Fitzwater, J.) (citing *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992)) ("On April 26, 1995 the right to be free from excessive force was clearly established.").

"Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace*, 400 F.3d at 289. Officer Meltabarger's conduct was objectively reasonable unless all reasonable officials in his circumstances would have known that his conduct violated Junior's constitutional right not to be subjected to excessive force. *See Cozzo*, 279 F.3d at 284 (quoting *Thompson*, 245 F.3d at 457). The factual allegations asserted by Pinedo, if true, would permit a reasonable jury to find that Officer Meltabarger was objectively unreasonable in his belief that his specific use of force against Junior was not excessive. This is so because a reasonable officer would have known that tasing a person

who was lying on the ground, handcuffed, who was no longer a threat to the safety of the officers or others, and who was neither resisting arrest nor attempting to evade arrest by flight, was excessive force that was clearly unreasonable.

The court therefore concludes that Officer Meltabarger is not entitled to summary judgment dismissing Pinedo's excessive force claim based on qualified immunity.

D

Pinedo has not produced evidence, however, for a reasonable jury to find that Officer Robinson did not have reason to believe that Junior posed a threat of serious harm to his or Officer Meltabarger's physical safety at the time he shot Junior. *See Davis*, 600 Fed. Appx. at 929. In his response briefing, Pinedo asserts that Officer Robinson did not follow various DPD procedures in his actions leading up to the confrontation with Junior, such as waiting for backup. Pinedo also maintains that Officer Robinson knew, or should have known, that Junior's cognitive abilities were impaired, because Junior was behaving in a bizarre manner, irrationally circling on the ground in a fetal position and communicating unintelligibly, and that Officer Robinson should have been concerned about Junior's ability to respond to commands, followed DPD procedures, and contacted mental health personnel. Pinedo posits that Officer Robinson also failed to utilize other available non-lethal means of restraining Junior. And Pinedo maintains that Officer Robinson knew, or should have known, that Junior was unarmed. As support, he points to the facts that neither Officer Robinson nor Officer Meltabarger stated that Junior exited the home brandishing or shooting a weapon; that Officer Robinson's testimony that he could not see Junior's hands is inconsistent with

his testimony that he saw Junior pound his fists on the ground and throw an object at Officer

Meltabarger moments before the shooting; and that Officer Meltabarger's decision to holster

his weapon in order to transition to his taser was a use-of-force determination that Junior was

not armed and was not a threat requiring lethal force.

"[A]ny of the officers' actions leading up to the shooting are not relevant for the

purposes of an excessive force inquiry in this Circuit." *Harris v. Serpas*, 745 F.3d 767, 772

(5th Cir. 2014), *cert. denied*, ___ U.S. ___,135 S.Ct. 137 (2014).  Officer Robinson's failure

to follow DPD procedures does not establish that his use of force was clearly unreasonable.

> The question is not whether "the force would have been
> avoided" if law enforcement had followed some other "police
> procedures." [*Fraire v. City of Arlington*, 957 F.2d 1268,] 1275-
> 76 [(5th Cir. 1992)] (quoting *Young v. City of Killeen*, 775 F.2d
> 1349, 1352 (5th Cir. 1985), *reh'g denied*, 778 F.2d 790 (5th Cir.
> 1985)).  Instead, "regardless of what had transpired up until the
> shooting itself," the question is whether "the officer [had] reason
> to believe, at that moment, that there was a threat of physical
> harm."  *Id.* at 1276.

*Thompson*, 762 F.3d at 440; *see also Ramirez*, 542 F.3d at 130 (citing *Young*, 775 F.2d at

1350-53) ("Even where an officer acts negligently and contrary to police procedure, this

court has failed to recognize a constitutional claim where a police officer used deadly force

in response to a reasonable belief that an individual posed a threat of serious harm.").

Similarly, Officer Robinson's failure to use non-lethal force does not show that his

use of lethal force was clearly unreasonable.  In *Ramirez* the Fifth Circuit concluded that "the

magistrate judge improperly criticized [the officer's] failure to consider the use of non-lethal

force or to employ a crisis negotiator," and further explained:

- 19 -

> "A creative judge engaged in *post hoc* evaluation of police
> conduct can almost always imagine some alternative means by
> which the objectives of the police might have been
> accomplished." *United States v. Sharpe*, 470 U.S. 675, 686-87
> [] (1985). "The question is not simply whether some other
> alternative was available, but whether the police acted
> unreasonably in failing to recognize or to pursue it." *Id.* at
> 687[.]

*Ramirez*, 542 F.3d at 129-30.  Moreover, the fact that Junior "was unarmed is also irrelevant"

to the objective reasonableness inquiry.  *Hudspeth v. City of Shreveport*, 270 Fed. Appx. 332,

337 (5th Cir. 2008) (per curiam) (citing *Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir.

1991)).

    Even assuming that Officer Robinson failed to follow DPD procedures, could have

used non-lethal force, and knew that Junior was cognitively impaired and unarmed, and that

another officer (at an earlier time) believed Junior was not a threat against whom lethal force

was required, these facts do not establish that Officer Robinson did not have reason to

believe that Junior posed a threat of physical harm at the moment Officer Robinson

discharged his weapon.  *See Thompson*, 762 F.3d at 440; *see also Graham*, 490 U.S. at 396-

97 (explaining that "the calculus of reasonableness must embody allowance for the fact that

police officers are often forced to make split-second judgments—in circumstances that are

tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a

particular situation").  Officer Robinson testified that he "could not see whether [Officer]

Meltabarger had been injured when [Junior] threw an object"; that he shot Junior when

Junior "charged [him] and reached for [his] pistol"; that he "was unable to move backward

- 20 -

because a fence was right behind [him]"; and that, after he shot Junior, Junior "grabbed [his] left wrist, [his] gun hand, before [Junior] fell to the ground."  Ds. App. 5.   Under these circumstances, a reasonable officer could well have feared for his own safety, reasonably believing that Junior was attempting to take his gun and use it against him.  That is, an officer could have reasonably believed that Junior posed a threat of serious physical harm.  *See Reese*, 926 F.2d at 501 ("[A]n officer is justified in using deadly force to defend himself and others around him.").

Pinedo also avers that the City did not request a distance determination test to be included in the firearms analysis,[8] which would have determined how far Junior was from Officer Robinson at the time of the shooting, and is circumstantial evidence of an attempt to cover up evidence.  But "speculation create[s] no genuine, material fact issue as to how a reasonable officer could have interpreted [Junior's] actions."  *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 384 (5th Cir. 2009) (addressing similar argument in which plaintiff alleged defendants moved location of evidence after shooting in cover up attempt, and concluding that alleged moving of evidence was not part of "the facts that [officer] faced when he made

---

[8]Pinedo maintains that, because the City failed to request a distance determination test to be included in the firearms analysis, the court should apply an evidentiary rebuttable presumption that such a test, had it been ordered, would have produced results in Pinedo's favor.  But Pinedo does not cite any authority for such a presumption.  Moreover, it appears to be akin to the type of instruction to which Pinedo would only be entitled after a showing that evidence was spoliated.  Accordingly, the court denies Pinedo's request.

the split-second decision to use deadly force").[9]  And even if the City and officers did in fact

attempt to cover up evidence, their actions *after* the shooting are not related to "the facts that

[Officer Robinson] faced when he made the split-second decision to use deadly force."  *Id.*

Moreover, Pinedo does not present any evidence showing how close Junior was to Officer

Robinson at the time of the shooting.  Officers Robinson and Meltabarger, however, point

to Junior's autopsy report, in which the medical examiner found that a bullet entered Junior's

right hand, and that "[s]tippling extend[ed] medially over the right palm."  P. App. 135.

They contend that the presence of stippling around the entrance wound on Junior's palm

indicates a close-range shooting.  *See, e.g., Rodriguez v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d

1277, 1280 (11th Cir. 2014) (explaining that medical examiner testified that "[t]he entry

wound was surrounded by soot and stippling, indicating that the bullet had been fired at

close-range"), *cert. denied sub nom. Rodriguez v. Jones*, ___ U.S. ___, 135 S.Ct. 1707

(2015); *Davis v. Branker*, 305 Fed. Appx. 926, 930 (4th Cir. 2009) (same); *Lainfiesta v.

Artuz*, 2000 WL 1459800, at *6 (S.D.N.Y. Sept. 29, 2000) ("Stippling, the medical examiner

explained, is a phenomenon that occurs when a gun is fired at close range and partially burnt

and unburnt gunpowder strikes the skin."), *aff'd*, 253 F.3d 151 (2d Cir. 2001).

        In sum, Pinedo does not present any evidence that would enable a reasonable jury to

find that Officer Robinson did not have reason to believe that Junior posed a threat of serious

---

        [9]Pinedo also asserts that discrepancies between the crime scene photos provided by
the City and the photos taken in the laboratory setting further evidence a cover up.  But these
photos only deal with the taser, not the gun, and therefore are not relevant to determining
whether Officer Robinson was clearly unreasonable in shooting Junior.

physical harm at the time he shot him.  *See Davis*, 600 Fed. Appx. at 929.  Accordingly, Pinedo has not met his burden of showing that Officer Robinson's use of force was objectively unreasonable.  The court therefore grants summary judgment dismissing Pinedo's excessive force claim against Officer Robinson based on qualified immunity.[10]

\* \* \*

For the reasons explained, Pinedo's action against Officer Robinson is dismissed based on qualified immunity.  The court is today entering a final Rule 54(b) judgment in Officer Robinson's favor.  Pinedo's claims against Officer Meltabarger are dismissed except for his claim for excessive force.

**SO ORDERED**.

January 13, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[10]Because the court concludes that Pinedo has not sufficiently shown that Officer Robinson violated Junior's Fourth Amendment rights, the court need not proceed to the second step in the qualified immunity analysis—whether Officer Robinson's actions were unreasonable in light of clearly established law.  *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").